Exhibit A

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | C.A. No: |
| | | |
| SHARON LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | AMENDED |
| vs. | ) | SUMMONS |
| | ) | (JURY TRIAL REQUESTED) |
| THE MEDICAL UNIVERSITY OF SOUTH | ) | |
| CAROLINA (MUSC) d/b/a | ) | |
| MEDICAL UNIVERSITY HOSPITAL | ) | |
| AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint on the subscriber at his office at 4000 Faber Place Drive, Suite 300, North Charleston, SC 29405 within thirty (30) days after the service thereof, exclusive of the day of service. If you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

Respectfully Submitted,

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

November 3, 2022

1

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

STATE OF SOUTH CAROLINA        )        IN THE COURT OF COMMON PLEAS
                               )
COUNTY OF CHARLESTON           )        C.A. No:

SHARON LEWIS,                  )
                               )
        Plaintiff,             )
                               )                AMENDED
    vs.                        )                COMPLAINT
                               )            (JURY TRIAL REQUESTED)
THE MEDICAL UNIVERSITY OF SOUTH)
CAROLINA (MUSC) d/b/a          )
MEDICAL UNIVERSITY HOSPITAL    )
AUTHORITY,                     )
                               )
        Defendant.             )
_____)

The Plaintiff, Sharon Lewis, by and through her undersigned attorney Bonnie Travaglio Hunt of Hunt Law LLC, does hereby makes the following claims and allegations against the Defendant, Medical University Hospital Authority:

## **PARTIES AND JURISDICTION**

1. The Plaintiff is a resident of the State of South Carolina.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

3. The Defendant, Medical University Hospital Authority (hereinafter referred to as Defendant) is a component of the Medical University of South Carolina. The hospital is a private non-private 501(c)(3), a general acute care hospital with a voluntary governing board, which does business in, contracts in, and derives benefit from the laws of the State of South Carolina. The Medical University Hospital Authority does not have a registered agent with the South Carolina Secretary of

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

States office and operates under the guise of The Medical University of South Carolina.

4. This action is brought pursuant to Americans with Disabilities Act. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

5. This action is brought pursuant to the Age Discrimination in Employment Act (ADEA) 29 U.S.C. 626 for age discrimination.

6. At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendant as defined by State and Federal Law.

7. On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

8. At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

9. At all times, relevant to the allegations in this Complaint, the Defendant operated a facility in the State of South Carolina.

10. All parties and events herein mentioned are within the jurisdiction of this Honorable Court.

11. This Court has jurisdiction over the parties and subject matter and venue is proper.

## **PROCEDURAL HISTORY**

12. That on October 3, 2022, the Plaintiff filed a charge of discrimination with the EEOC alleging discrimination based on Age Discrimination, Disability Discrimination, Hostile Work Environment and Retaliation.

13.     That the Charge of Discrimination set forth the following:

*"I.  I began my employment on October 25, 2021, as a Document Management Specialist.  During the hiring process I disclosed my need to use an ambulatory device to assist with my mobility.  On November 8, 2021, I asked a representative in Employment Health Services, for information on how to request a reasonable accommodation for my disability-related impairment.  I was advised to discuss my request with management.  On November 9, 2021, management denied my request and chastised me for going outside my command.  Since this time I have struggled to perform the physical-related tasks required of my position.  On September 8, 2022, I was discharged.  II.  I was told my request for a reasonable accommodation was denied because it wouldn't be fair to the other employees.  I was told I was discharged for unsatisfactory performance, and because management did not feel I could improve my productivity.  III.  I believe that I have been discriminated against on the basis of disability, and retaliation, in violation of Title I of the Americans with Disabilities Act of 1990, as amended."*

14.     The EEOC failed to conduct an investigation into the Plaintiff's allegations.

15.     The EEOC issued a right to sue on October 12, 2022.

16.     The EEOC Right to Sue set forth "**DETERMINATION OF CHARGE:**  The EEOC issues the following determination:  The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violation of the statute.  This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the Statutes.  The EEOC makes no finding as to the merits of any other issues that might be

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

construed as having been raised by this charge.  **NOTICE OF RIGHT TO SUE:** This is official notice from the EEOC of the dismissal of your charge and of your right to sue.  If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.**  Receipt generally occurs on the date that (or your representative) view this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days."

17.   That not more than 90 days have passed since the issuance of the Right to Sue.

### FACTS

18.   That the Plaintiff is a Caucasian Female over the age of forty.

19.   That the Plaintiff applied for a position of Document Management Specialist I with the Defendant.

20.   That the Plaintiff was interviewed.  That the advertisement for the position was different from the job description provided to the Plaintiff during her employment. That during the Interview the Plaintiff believed that she could perform the essential functions of the position with her cane.

21.   That on October 14, 2021, the Plaintiff went through MUSC Employee Health Services, which process individuals for their positions.  The Defendant was fine with the Plaintiff performing her position with a cane.  At that time, they asked the plaintiff if she needed any other accommodations.  The Plaintiff informed health services that she felt that she would be fine with her cane.   Health Services informed the Plaintiff at that time that if she needed any other accommodations she would be required to

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

present medical documentation from her physician. The Plaintiff was the oldest individual in her department.

22. The Plaintiff was hired by the Defendant on October 25, 2021, as a Document Management Specialist I.

23. That the Plaintiff's direct supervisor was Greg Bellamy with the Lead being Lisa Lynch.

24. That the Plaintiff was hired to work second shift 11:30 am to 8:00 pm.

25. That the advertisement for the position was different from the job description provided to the Plaintiff during her employment. That during the Interview the Plaintiff believed that she could perform the essential functions of the position with her cane.

26. As a Document Management Specialist I, the Plaintiff's job description set forth the following: **Hours per week**: 40; **Scheduled Work Hours/Shift**: Monday-Friday w/ rotating Saturdays, 11:30 am to 8:00 pm. Work schedule is subject to change per manager/team lead discretion. **Fair Labor Standards Act Status**: Hourly; **Job Summary/Purpose**: Under limited supervision, the Document Management Specialist I will assist the Manager, Team Lead and Shift Supervisor in supporting the mission of Health Information Services in relation to integrity, security & availability of patient records. **Minimum Training and Education**: High School diploma and 2 years' experience in an administrative support role, preferably within healthcare, including basic knowledge of computers & operation. Medical Terminology preferred. Organizational skills required & ability to multi-task. **Required Licensure, Certifications, Registration: Additional Duties and**

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

**Responsibilities:  Physical Requirements:**  Ability to perform job functions while standing.  (Frequent)   Ability to perform job functions while sitting (Frequent). Ability to perform job functions while walking.  (Frequent)  Ability to climb stairs. (Infrequent)  Ability to work indoors.  (Continuous)  Ability to work from elevated areas.  (Frequent) Ability to work in confined/cramped spaces.  (Infrequent)  Ability to perform job functions from kneeling positions.  (Infrequent)  Ability to bend at the waist.  (Frequent)  Ability to squat and perform job functions. (Infrequent)  Ability to perform repetitive motions with hands/wrists, elbows and shoulders. (Frequent) Ability to reach in all directions.  (Frequent)  Possess good finger dexterity. (Continuous) Ability to fully use both legs.  (Continuous) Ability to fully use both hands/arms.  (Continuous)  Ability to lift and carry 15 lbs. unassisted.  (Infrequent) Ability to lift/lower objects 15 lbs. from/to floor from/to 36 inches unassisted. Ability to list from 36 inches to overhead 15 lbs.  (Infrequent)  Ability to maintain 20/40 vision, corrected, in one eye or with both eyes.  (Continuous)  Ability to see and recognize objects close at hand or at a distance (continuous)  Ability to match or discriminate between colors.  (Continuous) (Selected Positions) Ability to determine distance/relationship between objects; depth perception. (Continuous) Ability to maintain hearing acuity, with correction.  (Continuous) Ability to perform gross motor movements. (Continuous) Ability to work in a latex safe environment. (Continuous)  *Ability to maintain tactile sensory functions.  (Frequent)*(Selected Positions)  *Ability to maintain good olfactory sensory function (Frequent) *(Selected Positions)* Ability to be qualified physically for respirator use, initially and as required. (Continuous) (Selected Positions)"

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

27.    That the Plaintiff was considered a good employee.

28.    The Plaintiff is familiar with the policies and procedures of the Defendant. As a Document Management Specialist I the Plaintiff was required to pick up medical records at different locations and return those records to the office, once the records were returned to the office they were scanned and indexed.

29.    That the Plaintiff received training when she was hired to perform the position. That the Plaintiff was only provided minimum training for her position. At the time the Plaintiff was hired, a younger co-worker was hired and received extensive training for her position. Both positions were the same. The younger co-worker was treated more favorably than the Plaintiff based on age and non-disability.

30.    That the Plaintiff worked with 3 other persons on her shift.  That when working the individuals on the shift would decide amongst themselves who would go to each of the 4 different locations to pick up records, return them to the office, prepare them into batches, scan and index the records.

31.    The Plaintiff performed these functions with or without accommodation from date of hire until November of 2021.

32.    On November 4, 2021, the Plaintiff saw her treating physician regarding her knees. At that time the Plaintiff's treating physician completed a Parking Management Form for the Plaintiff to receive a parking pass.

33.    On November 8, 2021, the Plaintiff requested information from an Employee Health Services Representative, Andrea Cumberland, regarding a request for accommodation for a disability-related impairment.  Cumberland instructed the Plaintiff to speak to the management.  The Plaintiff informed Cumberland that she

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

did not want to jeopardize her position by requesting an accommodation or informing the Defendant of any medical restrictions.  Cumberland and the Plaintiff discussed the job description that the Plaintiff had in her possession and that the job description was Administrative not the courier position that the Plaintiff was performing.

34.    On November 9, 2021, the Plaintiff sent an email to Andrea Cumberland regarding the conversation on the 8th.  The Plaintiff expressed concern regarding medical conditions.

35.    On November 9, 2021, when the Plaintiff arrived at work, she was ushered into Greg Bellamy's office where she was chastised, degraded, and accused of violating the chain of command by going above their heads to the Medical Accommodations Assistance in the Human Resources Department.    Bellamy accused the Plaintiff of hiding information and not telling them of her medical conditions when in fact the Plaintiff had a discussion with Health Services regarding her cane and the use thereof.

36.    On November 9, 2021, the Plaintiff gave a letter to Lisa Lynch (Management Lead) regarding a Request for Accommodations.

*Hello Lisa Lynch,*
*I want to state concerns I have due to mobility issues with regards to my knees. Yesterday, November 8, 2021, I completed the process for a parking decal through the Office of Parking Management. I do now have a MUSC parking decal to accompany my Handicap Placard. My other concern is to try and get accommodations to do my assigned job with regards to all of the required walking. You see I am unable to ride the normal MUSC BUS as its entry steps are too high for me to navigate.*
***As you know, I started this job on Monday, October 25, 2021 with MUSC as a Document Management Specialist I in Medical Records (MRs).*** *I had all day Orientation at my residence on Monday, October 25, 2021 as the covid-19 is considered a serious health issue so formal orientation is now done virtually. When I interviewed for this position, they told me there would be a lot of walking and I thought by what they told me, I could handle it with my cane.*

9

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

*When I went to Employee Health Services on October 14, 2021 to be processed for this position, I told them of my existing medical condition for my right and left knees and they were fine with me using my cane. **In addition, they asked me do you need any other accommodations. I basically answered that I thought that the cane would be suitable. They also said that any other accommodations would require medical paperwork from a doctor. But, what these were or could be was not explained nor did I ask for further explanation.***

***Tuesday, October 26, 2021 was my first workday at the Hospital. On this day, I found out that walking is required every day Monday thru Friday on the MUSC Campus to pick up medical records** which require the work of Bundling, Processing, Scanning, and Indexing. So, this mentioned work takes place at the Medical Records Office (MRO) which I work out of.  **In short, I am doing courier work by foot to the locations which I get the MRs from. This courier work requires going to the locations and back to the MRO.***

*A cart is provided that has 2 wheels with compartments to put the records into and secure them. But, the courier must now walk back to the **MRO**.*

*Since my first day at the site, I am considered a trainee and have an assigned trainer. So, the first week, both my trainer and I walked from the main hospital to the MUSC Health Ashley River Tower (ARTS) Center located at 25 Courtenay Drive and MUSC Shawn Jenkins Children's Hospital at 10 McClennan Banks Drive in Charleston. Every day and/or week may be a different location. Please note that these walks were outside from building to building. Again, walks from location to location may be a combination of outside and/or inside.*

*Of course, outside walks are more difficult than inside walks. But again, **the length of the walks may present a significant physical challenge as well. So, the second week was not as bad as the first week.***

*When I am performing work in the **MRO**, I have no physical challenge to work with the assigned equipment and/or the computer. Why? Simply because there is no lengthy walking and/or required inside or outside walks.*

***There is other transportation that is available such as a Transportation Van. The problem with the Transportation Van is that it is not timely and its main purpose is for the transport of patients. But, they will take employees. Now I can get onto this van as the entry steps are not high and this van has a mechanical lift as well.** Again, the problem is with this that a time factor comes into play which may affect my Productivity.*

*My orthopedic doctor is Waddell Gilmore and he knows I have Osteoarthritis in my knees and my right knee is bone on bone. I have been trying to keep up when my trainer and I go on medical record pickup but it pretty much affects my right knee the whole day.*

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

*So earlier yesterday, November 8, 2021, I went by Employee Health Services and spoke in private with Andrea Cumberland who is an RN over there. Her phone number is 843-792-2916. Her email is cumberla@musc.com. She did talk to 3 different persons about my medical situation. She suggested I talk to management first to see if they would give me accommodations for me to do my job. She referred to this approach as Plan A. I mentioned my Productivity may suffer because of taking too long to complete trips to get MRs as well as returning to the MRO. She said one of the accommodations could be to allow more time to retrieve MRs. She even mentioned that MUSC has courier services and maybe they could be used as well. She also agreed that my walking with a cane and pulling a dolly is unsafe especially when done on the outside sidewalks. She did say she would call you and give you a heads-up.*
*I did say to her that I did not want to jeopardize my employment by making a request for either accommodations and/or medical restrictions.*

*She wanted to know what the job description said with regards to walking and I said I did believe that walking was in it but it did not spell out the kind of walking that may be required such as being an on foot courier. She said that she too thought that this job would be strictly **Administrative.***
***She did say that we are here to assist you with getting needed accommodations and/or medical restrictions to enable you to perform your job. We are here to help you not undermine you.***
***She did say that if Plan A is not possible then we will go to Plan B which requires medical paperwork.** I was relieved by her encouragement.*
*I hope and pray that MUSC will work with me in relation to my needed accommodations as well as any medical restrictions so I am able to satisfactorily perform the job requirements until I can get my surgery to replace my right knee. I seriously believe that I can trust you to assist me with this request. I appreciate any and all consideration with regards to this request.*

37. After submitting the form to HR, the Plaintiff was chastised by management for going outside her chain of command.  Due to her fear of being chastised again the Plaintiff would not address the issues of accommodation again with management.

38. On November 18, 2021, the Plaintiff completed an Employee Accommodation Medical Certification Form regarding the Plaintiff's disabilities.  The Plaintiff provided this information to MUSC by emailing Brantley Rogers and Andrea Cumberland.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

39.   The Defendant failed and refused to grant the Plaintiff any accommodation.  The Defendant informed the Plaintiff that any accommodation would be unfair to the other employees.  The Plaintiff continued to work for the Defendant performing all aspects of her position without accommodation.

40.   That throughout the Plaintiff's employment there were no complaints from the Plaintiff's coworkers.

41.   That the Plaintiff used the shuttle bus sparingly to get to each location to pick up records without issue. The shuttle bus is strictly for patients at MUSC, but they do allow MUSC Employees to use it. But Management gave zero assistance with regards to the Plaintiff's getting routine assistance with the shuttle bus. So, the Plaintiff's courier work was mostly walking with occasional/limited shuttle bus assistance.

42.   That during the Plaintiff's employment each and every employee was counseled regarding production.  During the Counseling, the Plaintiff informed the Defendant that she was not trained properly and that other employees were better trained than her.  Even though counseled regarding production, the Plaintiff was also informed by her employer that they were there to support her with success.

43.   That the Plaintiff was injured during her employment.  As a result of that injury, she was perceived as disabled by her employer.  On July 23, 2022, the Plaintiff fell on her way to work.  The Plaintiff was taken to the ER for treatment.  While in the ER she called management to inform them of the fall.

44.   That after the fall and the Plaintiff was checked out at the ER and released to return to work.  The Plaintiff went to work and worked the rest of the day.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

45.   That on August 20, 2022, the Plaintiff suffered a second fall at work while outside Shawn Jenkins Ambulance Entrance.  The Plaintiff was assisted by security and nurses, taken to the ER and treated.  The Plaintiff was unable to call the office due to the fact that she did not have the information to notify her coworkers that she was in the ER.  After the Plaintiff was permitted to leave the ER, she returned to work and informed her lead what had occurred.  Lisa Lynch was not happy with the Plaintiff but after the Plaintiff told her what had occurred Lynch calmed down and informed the Plaintiff that her job was safe.

46.   That after the second fall the Plaintiff's second level manager made the Plaintiff a target.  The Plaintiff was being treated differently based on her age and her perceived disability.  Prior to the Plaintiff's second level supervisor change, the Plaintiff was considered to be one of the best employees with the best work ethics and attendance records.

47.   On August 26, 2022, the Plaintiff suffered a medical emergency and was required to be hospitalized.  The Plaintiff notified her Team Lead, Lisa Lynch.  That the Plaintiff and the Plaintiff's husband kept Lisa Lynch informed of the Plaintiff's status at all times.  During each conversation, Lynch informed the Plaintiff and the Plaintiff's husband that the Plaintiff's job was safe and not to worry about it.

48.   That the Plaintiff firmly believed that she was improving and considered an asset to the Defendant.  At no time did the Plaintiff believe that she would be terminated for her performance as she was never threatened with termination.

49.   That the Plaintiff had to seek treatment for her medical conditions and ensured that she always had PTO time to cover her treatment.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

50.    That the Plaintiff was informed by Lynch that she would go into unapproved absences on September 9, 2022.

51.    That the Plaintiff remained in the hospital until September 2, 2022.

52.    That the Plaintiff's husband contacted MUSC HR on September 2, 2022 and spoke to Lakeisha Manigault for additional ADA Forms. The ADA forms were provided by email attachment to the Plaintiff's resident email by Lakeisha the same day.

53.    That on September 6, 2022, the Plaintiff went to a scheduled medical appointment with her podiatrist.  The Podiatrist determined that the Plaintiff could return to work on September 8, 2022, as long as she had the mandatory medical restrictions.  The Plaintiff's podiatrist completed the MUSC ADA Forms.  The Plaintiff was given the original forms and the physician's staff faxed he forms to MUSC Human Resources.  The forms were also emailed to the Defendant.

54.    On September 7, 2022, the Plaintiff informed Lynch that she was returning to work.

55.    That on September 7, 2022, the Plaintiff was informed that she was approved to return to work with restrictions and should return on September 8, 2022.

56.    That the Plaintiff's coworkers had decided amongst themselves to accommodate the Plaintiff's condition with no issues.

57.    That the Plaintiff was informed she would be accommodated.

58.    The Plaintiff was terminated from her employment on September 8, 2022.  The Plaintiff was informed that the reason for termination was because the Defendant did not believe that she could complete 300 papers per hour.

59.    That no representative from Human Resources participated in the Plaintiff's termination. At all times, the Plaintiff was informed that the termination was within the department.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

60.    On September 8, 2022 the Plaintiff protested the termination and sent an email to Lakeisha Manigault.

61.    That the reason provided to the Plaintiff was pretextual.  That the Plaintiff was terminated for requesting an accommodation for her disability and age.

62.    At all times the Plaintiff could perform the essential functions of her position with or without accommodation.

63.    That younger employees with less production were not terminated from their employment.

64.    Those employees who did not have the Plaintiff's record of a disability, actual disability or perceived disability were not terminated for their production or attendance which were less than the Plaintiff's.

65.    That as a direct and proximate result of the Defendant's intentional and unlawful action of wrongfully terminating the Plaintiff, the Plaintiff has suffered lost wages, emotional damages, compensatory and consequential damages.

66.    That the Plaintiff is entitled to an award of actual damages, compensatory, consequential, and punitive damages against the Defendant for his unlawful termination.

67.    That as a direct and proximate cause of the Defendant's wrongful termination in violation of Americans with Disabilities Act, Age Discrimination, Retaliation and hostile work environment of the Plaintiff, the Plaintiff:

a.    Suffered the loss of her job;

b.    Suffered the loss of benefits associated with her job;

c.    Suffered future lost wages and benefits;

d.    Suffered consequential and compensatory damages;

e.    Suffered emotional damages;

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

      f.      Incurred attorney's fees and costs as a result of having to bring this action.

68.     That the Plaintiff is entitled to an award of damages against the Defendant for actual damages, consequential damages, punitive damages, attorney's fees, costs of this action and other damages, such as this Honorable Court deems appropriate and just appropriate.

## FOR FIRST CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT

69.     Paragraphs one (1) through sixty-eight (68) are hereby incorporated verbatim.

70.     The Defendant is an employer as defined in ADA.

71.     That the Plaintiff is an employee as defined by the ADA.

72.     That the Plaintiff was considered an exemplary employee.

73.     That while the Plaintiff has been employed with the Defendant, the Plaintiff has performed her job duties at a satisfactory level of the Defendant as evidenced by different accolades.  That others were not terminated for alleged production.

74.     That the Plaintiff was discriminated against based on a record of disability, actual disability or perceived disability.

75.     That during the Plaintiff's employment she notified her employer of her mobility limitations prior to starting.

76.     That the Plaintiff requested accommodation from the Defendant in November 2021 and again in September 2022.  The Plaintiff's requests were ignored in November of 2021. The Plaintiff performed all aspects of her position without accommodation from November 2021 until September of 2022.  The only explanation provided to the Plaintiff for the rejection of her November 2021 request was that it would be unfair to her

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

coworkers.  If the Defendant had granted her accommodation the Plaintiff would not have suffered the medical emergency in September 2022.

77.    That in September 2022, the Plaintiff requested a second accommodation.  The Defendant instead terminated the Plaintiff a little over a month from her 1 year anniversary.

78.    That the Defendant perceived the Plaintiff as disabled and wanted to find any reason to terminate the Plaintiff's employment.

79.    That the Defendant considered the Plaintiff's disability or perceived disability when considering any and all employment decisions.

80.    That the Defendant treated younger non-disabled employees more favorably.

81.    That the Defendant terminated the Plaintiff from her employment because of her perceived disability and their unwillingness that they may have to accommodate the disability.

82.    That the Defendant violated its own policies and procedures when it allowed employees to harass the Plaintiff based on her actual or perceived disability.

83.    As a result of that perceived disability, the Defendant's employees terminated her employment.

84.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

85.    That any and all reasons offered by the Defendant as a reason for the Plaintiff's is pretextual.

86.    That the Plaintiff has suffered severe emotional damages as a result of the Defendant's discrimination against the Plaintiff.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

87.     That the Plaintiff was subjected to discrimination based on consideration of her disability, the Defendant's perception of the Plaintiff's disability, or in consideration of the Plaintiff's disability, the Defendant violated the ADA.

88.     That as a direct result of the Defendant's violation of ADA the Plaintiff has suffered:

     a.  Lost wages and lost benefits;

     b.  Future lost wages and Benefits;

     c.  Economic damages;

     d.  Economic hardship;

     e.  Lost wages;

     f.  Suffered anxiety, humiliation and emotional damages.

89.     That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to the ADA for the Defendant's discrimination against the Plaintiff based on her disability.

## FOR A SECOND CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT

## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AGE

## DISCRIMINATION IN EMPLOYMENT ACT

## AGAINST THE DEFENDANT

90.     Paragraphs one (1) through eighty-nine (89) are hereby incorporated verbatim.

91.     That the Plaintiff was an employee of the Defendant.

92.     That the Defendant was an employer in accordance with the Americans with Disabilities Act and Age Discrimination in Employment Act.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

93.   That the Defendants subjected the Plaintiff to harassment and hostile work environment.

94.   That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

95.   That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment.

96.   That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

97.   That the Plaintiff has been damaged as a result of the Defendant's work environment.

98.   That the Defendant are the direct and proximate cause of damage to the Plaintiff.

99.   That the Plaintiff is entitled to actual, compensatory, consequential and punitive damages from the Defendant as a result of the hostile work environment.

## FOR A THIRD CAUSE OF ACTION

## RETALIATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT

## AGAINST THE DEFENDANT

100.   Paragraphs one (1) through ninety-nine (99) are hereby incorporated verbatim.

101.   That the Plaintiff participated in a protected act when she reported discrimination and requested a reasonable accommodation.

102.   That the Plaintiff was retaliated against for requesting an accommodation when the Defendant allowed its managers to chastise and degrade her for seeking her first accommodation and terminating her from her employment when she requested her second accommodation.

103.   That the Defendant took adverse employment action against the Plaintiff because she had engaged in actions protected by the ADA when she requested a reasonable accommodation.

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932

104.    That the Defendant treated the Plaintiff differently regarding the terms and conditions she reported discriminatory actions.  The Plaintiff suffered retaliation for her complaints regarding discrimination.

105.    That, as a direct and proximate result of the Defendants' intentional unlawful and retaliatory actions, the Plaintiff:

      a.   Suffered lost wages and lost benefits;

      b.   suffered severe emotional distress;

      c.   suffered future lost wages and future lost benefits;

      d.   suffered economic damages;

      e.   Loss of employment;

      f.   Loss of Future employment;

      g.   incurred attorney fees for this action;

      h.   incurred costs of this action; and

      i.   will incur future attorney fees and costs.

106.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

WHEREFORE, the Plaintiff prays for an award of damages against the Defendant in the amount of:

A.    Actual damages;

B.    Consequential damages;

C.    Compensatory damages;

D.    Any and all damages permitted under State and Federal Human Affairs Laws;

E.      Any and All damages permitted under the ADA;

F.      Punitive damages;

G.      All other damages under South Carolina Law;

H.      Other damages such as this Honorable Court deems appropriate and just.


                        Respectfully Submitted,


                        *s/Bonnie Travaglio Hunt*
                        Bonnie Travaglio Hunt
                        Hunt Law LLC
                        Federal Bar # 07760
                        SC Bar # 12341
                        Attorney for the Plaintiff
                        4000 Faber Place Drive, Suite 300, N. Charleston, 29405
                        Post Office Box 1845, Goose Creek, SC 29445
                        (843)553-8709
                        Facsimile (843)492-5509
                        bthunt@huntlawllc.com

November 3, 2022

ELECTRONICALLY FILED - 2022 Nov 03 1:54 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004932